UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEWART BRODY, DDS and ELLEN BRODY, Plaintiffs, v. JEFFREY FERNANDEZ and STEPHANIE FERNANDEZ, Defendants. | **MEMORANDUM AND ORDER** 25-cv-01102 (LDH) (LGD) |

LASHANN DEARCY HALL, United States District Judge:

Stewart Brody ("Plaintiff S. Brody") and Ellen Brody ("Plaintiff E. Brody") (together, "Plaintiffs") bring the instant action against Jeffrey Fernandez (hereinafter "Defendant J. Fernandez") and Stephanie Fernandez ("Defendant S. Fernandez") (together, "Defendants"), proceeding *pro se*, for conversion, unjust enrichment, fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. Defendant J. Fernandez moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint in its entirety.[1]

**BACKGROUND[2]**

Plaintiff Stewart Brody was a dentist with a practice based out of Great Neck, New York. (Complaint ("Compl.") ¶ 4, ECF No. 1.) Defendant Jeffrey Fernandez was Plaintiff Stewart's office manager. (*Id.* ¶ 5.) As the office manager, Defendant Jeffrey had access to Plaintiffs' financial records, social security numbers, and credit cards. (*Id.* ¶ 6.) In addition to his other duties as the office manager, Defendant Jeffrey processed patients' payments using the office's

[1] Defendant S. Fernandez has not yet appeared in this action.
[2] The following facts are taken from the Complaint and are assumed to be true for purposes of deciding the instant motion.

credit card terminal. (*Id.* ¶ 7.) Around 2016, Plaintiff Stewart opened a second credit card terminal with the hope that the new terminal would result in saving him money through lowered credit card processing fees. (*Id.* ¶ 8.) On or around 2022, Defendant Jeffrey, without Plaintiff Stewart's authorization or knowledge, changed the routing information of the original credit card terminal to send certain payments to a bank account under Defendant Jeffrey's name at Sterling Bank. (*Id.* ¶¶ 10-11.) Plaintiffs specifically allege that Defendant Jeffrey would charge some patients using the first credit card terminal to direct a portion of the payments to himself and would charge other patients using the second credit card terminal to direct other payments to Plaintiff Stewart's bank account to avoid detection. (*Id.* ¶¶ 12-13.)

Plaintiff Stewart retired and sold his dentistry practice around September 2023. (*Id.* ¶¶ 4, 14.) As part of the sale, Plaintiff Stewart discovered that patients had made refund requests for payments that Plaintiff Stewart had never received. (*Id.* ¶ 15.) These requests led to Plaintiffs' discovery of Defendant Jeffrey's actions. (*Id.* ¶ 16.)

Between June 2023 and July 2024, Defendant Jeffrey used Plaintiffs' credit cards without authorization for personal expenses, including utility bills and Venmo transactions. (*Id.* ¶ 19.) Defendant Jeffrey also made payments to himself using Plaintiffs' credit cards and the original credit card processing terminal that was now associated with the Sterling Bank account. (*Id.* ¶ 20.) Plaintiffs allege that as a result of these actions, Defendant Jeffrey siphoned over $500,000 of Plaintiffs' money. (*Id.* ¶ 21.)

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of defendants' liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true[.]" *Id.* (citation omitted). Where a party proceeds pro se, that party's filings on a motion to dismiss must be "'liberally construed'" and are held to "'less stringent standards than formal pleadings drafted by lawyers.'" *Williams v. Simon*, No. 18-CV-789, 2019 WL 13417402, at *2 (E.D.N.Y. July 1, 2019) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). The Court, therefore, reads pro se briefs "'to raise the strongest arguments they suggest.'" *Id.* (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

**DISCUSSION**

To successfully plead a civil RICO claim, Plaintiffs must allege "the existence of seven constituent elements: (1) that the defendant[s] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480-CV, 2022 WL 570082, at *1 (2d Cir. Feb. 25, 2022) (alteration in original) (citing *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983); *and then* 18 U.S.C. § 1962(a)-(c)). Defendant J. Fernandez argues that Plaintiffs have failed to plead the statutory elements of a RICO claim. (Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 2, ECF No. 19.) Although Defendant J.

Fernandez does not provide much by way of argument, a review of the Complaint reveals that, at least with respect to the element that the activities affect interstate commerce, Defendant J. Fernandez is correct.

In order to satisfy the effect on interstate or foreign commerce element of a civil RICO claim, a plaintiff need only allege that the enterprise had at least a "'minimal effect' on interstate (or foreign) commerce." *O'Neill v. NYU Langone Hosps.*, No. 23-CV-4679, 2024 WL 4216501, at *9 (E.D.N.Y. Sept. 17, 2024) (citing *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001)). To allege that an enterprise had at least a minimal effect on interstate or foreign commerce, a plaintiff must make "some factual allegations of a nexus with interstate commerce." *Id.* (quoting *Lally v. Leff*, No. 17-CV-4291, 2018 WL 4445152, at *5 (E.D.N.Y. Sept. 18, 2018)). Wholly vague and conclusory allegations do not satisfy a plaintiff's burden to make some factual allegation of a nexus with interstate commerce. *Id.* (finding that plaintiff's allegation that the enterprise "affected commerce" was "vague and conclusory assertions" that did not satisfy the "low pleading threshold" for a civil RICO claim) (citation omitted); *see also Rubinov v. Suyunova*, No. 24-CV-04375, 2025 WL 461353, at *2 (E.D.N.Y. Feb. 11, 2025) (holding that allegations that the defendants' actions affected interstate commerce were conclusory where plaintiff pleaded that the defendant supported or transmitted threats using social media); *see also Lally*, 2018 WL 4445152, at *5 (finding that plaintiff failed to allege a minimal effect on interstate commerce where plaintiff only pleaded "vague and conclusory assertions regarding mail, wires, and interstate commerce").

Here, Plaintiffs' allegations that the dental practice was engaged in or affected commerce are wholly conclusory. (Compl. ¶¶ 42.) Indeed, Plaintiffs' allegations are not altogether different from the pleadings in *O'Neill*. In *O'Neill*, plaintiff's pleading that the enterprise's

"activities affected interstate commerce" through use of "multiple facilities of interstate commerce, such as wire transfers of money, telephone calls, and emails" were "vague and conclusory." *O'Neill*, 2024 WL 4216501, at *9 (quotation omitted). Thus, Plaintiffs have failed to allege that the enterprise was engaged in interstate commerce and so their RICO claim fails.[3] Therefore, the Court dismisses Plaintiffs' RICO claim.

Having dismissed Plaintiffs' only federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *See Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*, No. 23-CV-7052, 2025 WL 929710, at *31 n.29 (E.D.N.Y. Mar. 27, 2025) (citing *Garrasi v. Wells Fargo Bank, N.A.*, No. 22-921, 2024 WL 191802, at *2 (2d Cir. Jan. 18, 2024)).

## CONCLUSION

For the aforementioned reasons, the Court DISMISSES Plaintiffs' civil RICO claim and declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge

[3] To be sure, Plaintiffs allege that Defendant J. Fernandez used the credit card terminal to send payments to Plaintiffs and his bank accounts. (Compl. ¶¶ 10, 12-13.) It is generally true that the "use of an instrumentality of commerce . . . is also generally viewed as an activity that affects interstate commerce." *U.S. v. Mejia*, 545 F.3d 179, 203 (2d Cir. 2008). That said, purely intrastate use of an instrumentality does not affect interstate commerce. *See Gitterman v. Vitoulis*, 579 F. Supp. 423, 425 (S.D.N.Y. 1983) ("There is no authority for plaintiffs' proposition that intrastate use of the telephone is equivalent to an effect on interstate commerce by the enterprise, and this court declines to so hold."); *c.f. Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 309 (E.D.N.Y. 2014) (finding that "the use of a cellular phone by Li, but not for communication between states, is strictly an intrastate activity, notwithstanding the fact that it utilizes interstate technology"). Thus, even assuming that the use of a credit card terminal is an instrumentality of commerce, Plaintiffs nonetheless do not allege a single fact that the credit card terminal was used in interstate commerce.